NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jesse J. AVERHART, <br><br> Plaintiff, <br> v. <br><br> COMMUNICATIONS WORKERS OF AMERICA, et al., <br><br> Defendants. | Civ. No. 13-1093 <br><br> OPINION |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter has come before the Court upon the Motion to Disqualify Counsel and for a Preliminary Injunction filed by Plaintiff Jesse J. Averhart ("Plaintiff"). (Docket Entry No. 14). Defendants Communications Workers of America ("CWA") and the Communications Workers of America Local 1033 ("CWA Local 1033"), as well as Lawrence Cohen ("Cohen"), Christopher Shelton ("Shelton"), Annie Hill ("Hill"), Rae Roeder ("Roeder"), Diane Spence-Brown ("Spence-Brown"), Anthony Miskowski ("Miskowski"), and Dennis Reiter ("Reiter") oppose the motion. (Docket Entry Nos. 16, 17). The Court has decided the matter upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons given below, Plaintiff's Motion to Disqualify Counsel is denied.

1

## II. BACKGROUND

This case concerns whether officers of a national union, the CWA, and one of its local branches, the CWA Local 1033, complied with federal and state law as well as the union's constitution and bylaws. The Court assumes the parties' familiarity with the underlying facts of the case and briefly recites those facts relevant to the Court's analysis.

*A. The Parties*

Defendant CWA is a nationwide union with various subordinate affiliates. (Docket Entry No. 1 at ¶ 6). Defendants Cohen, Hill, and Shelton (collectively, "National Union Defendants") have all held executive positions at the CWA or its regional affiliate, CWA District 1. (*Id*. at ¶¶ 8, 9, 14-16). The CWA and these officers are represented in this lawsuit by the law firm Weissman & Mintz LLC.

Defendant CWA Local 1033 is a subordinate chartered local union of the CWA that is located within CWA District 1. (*Id*. at ¶¶ 10, 17). Defendants Roeder, Spence-Brown, Miskowski, and Reiter (collectively, "Local Union Defendants") have all held elected executive positions at the CWA Local 1033 and also serve as members of the CWA Local 1033 Executive Board and Finance Committee. (*Id*. at ¶¶ 22-25). The CWA Local 1033 and these officers are represented in this lawsuit by the Law Offices of Walter R. Bliss, Jr.

Plaintiff is a member of the CWA and the CWA Local 1033. (*Id*. at ¶ 26). He previously served as Executive Vice President and a staff representative of the CWA Local 1033. (*Id*. at ¶ 27). Plaintiff led unsuccessful efforts to unseat the current CWA Local 1033 leadership in elections held in 2005, 2008, and 2011. (*Id*. at ¶ 28). In 2010, Plaintiff initiated the first of two lawsuits concerning the management of the CWA Local 1033.

B. *First Action*

Plaintiff's first lawsuit ("First Action") was initiated in 2010, and named the CWA, the CWA Local 1033, Roeder, Cohen, Shelton, and another union officer, Hetty Rosenstein as defendants. (*Averhart v. Communications Workers of America*, Case No. 10-6163 ("First Action"), Docket Entry No. 1). Plaintiff alleged that these defendants violated (1) the CWA Constitution by failing to organize unorganized members; (2) the CWA Constitution by failing to fully disclose financial disbursements of union dues; and (3) the CWA Constitution and Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA") by failing to provide secret ballot voting for the election of officers in 2005 and 2008. (*Id*.).

Approximately one year later, Plaintiff sought leave to amend his complaint. (First Action, Docket Entry No. 39). Specifically, Plaintiff sought to add allegations concerning the union's 2011 officer elections, and to add new claims pertaining to the 2005 and 2008 elections under Title I and Title V of the LMRDA as well as state common law. (First Action, Docket Entry No. 39, Attach. 2). Plaintiff also sought to amend the complaint to add 39 new defendants. (*See id*.).

Magistrate Judge Tonnianne Bongiovanni denied Plaintiff's motion to amend on May 3, 2012. (First Action, Docket Entry Nos. 49, 50). Judge Bongiovanni held, in relevant part, that (1) amendment to add Plaintiff's proposed claims under Title I and Title V of the LMRDA would be futile; (2) amendment to add Plaintiff's proposed state law claims would cause undue prejudice to the defendants; and (3) Plaintiff had not shown that any of the proposed new defendants had received adequate notice of the lawsuit such that Plaintiff's proposed amendments would relate back to the date of the filing of the complaint. (First Action, Docket Entry No. 49 at 10-15). Plaintiff filed a motion for reconsideration, (First Action, Docket Entry

3

No. 51), which was denied on September 10, 2012, (First Action, Docket Entry Nos. 60, 61). Plaintiff then appealed the Magistrate Judge's decision, (First Action, Docket Entry No. 63), and that appeal was denied on January 30, 2013, (First Action, Docket Entry Nos. 84, 85).

Plaintiff also moved to disqualify Defendants' counsel, arguing that joint representation of the unions and its officers was impermissible under the New Jersey Rules of Professional Conduct (RPCs) and the LMRDA. (First Action, Docket Entry No. 67). The Court disagreed, holding that Plaintiff had not established a concurrent conflict of interest because the case did not concern allegations of self-dealing on the part of the union officers and it appeared that an *ultra vires* defense was not realistically available to the union. (First Action, Docket Entry No. 94 at 5-11).

## C. Second Action

On February 25, 2013, shortly after the Court denied Plaintiff's appeal of the Magistrate Judge's decision in the First Action, Plaintiff initiated this lawsuit ("Second Action"). (Docket Entry No. 1). In the complaint, Plaintiff names a number of the defendants from the First Action as well as Spence-Brown, Miskowski, Reiter, and Hill, whom Plaintiff had unsuccessfully sought to add in the First Action. (*Id*.). He claims that (1) the CWA and the National Union Defendants failed to inform its members of the provisions of the LMRDA in violation of Title I of the LMRDA; (2) the CWA and the National Union Defendants "aided, abetted, instigated, directed or perpetuated violations of the CWA constitution by failing to enforce said Constitution to deprive plaintiff . . . of his rights" in violation of Title I of the LMRDA; (3) the National Union Defendants violated their fiduciary duties by failing to enforce the CWA constitution in violation of Title V of the LMRDA; (4) all Defendants failed to organize workers, ensure CWA Local 1033's assets were expended solely on behalf of members, and ensure fair and democratic

elections in violation of the CWA constitution and the Labor Management Relations Act; (5) all Defendants breached their fiduciary duties under state common law; and (6) all Defendants breached a contract in violation of state common law. (*Id*.).

On May 22, 2013, Plaintiff filed a motion to consolidate the two actions. (First Action, Docket Entry No. 89). The Court denied Plaintiff's motion, however, noting that it "appear[ed] to be an effort to circumvent the rules of amendment" as Plaintiff "was previously denied leave to amend his complaint in the First Action to add precisely those defendants and claims that appear in the Second Action." (*Id*.). Plaintiff then filed a motion to disqualify Defendants' counsel and for a preliminary injunction, (Docket Entry No. 14), which the Court now considers.

### III. ANALYSIS

With this motion, Plaintiff seeks (1) to disqualify Defendants' counsel; and (2) a preliminary injunction to enjoin the CWA and the CWA Local 1033 from expending funds on legal counsel for the National Union Defendants and the Local Union Defendants in this action. The Court addresses Plaintiff's motion to disqualify Defendants' counsel first.

*A. Motion to Disqualify Counsel*

When making a motion to disqualify counsel, the "party seeking to disqualify carries a heavy burden and must satisfy a high standard of proof." *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 992 F. Supp. 241, 246 (D.N.J. Jan. 28, 1998). "Motions to disqualify are viewed with disfavor as disqualification is a drastic remedy with often far-reaching, sometimes devastating implications." *Id*. Courts should, therefore, "hesitate to impose [disqualification] except when absolutely necessary." *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Savings, FBS*, 944 F. Supp. 341, 345 (D.N.J. July 1, 1996).

Plaintiff advances arguments in favor of disqualification that are similar to those he raised in his motion to disqualify in the First Action. He primarily argues that disqualification is required under RPCs 1.7 and 1.13, which govern concurrent conflicts of interest and the representation of organizational clients. Under RPC 1.13, a "lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." RPC 1.13(a). "A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents" unless the representation involves a concurrent conflict of interest. RPC 1.13(g), 1.7. A concurrent conflict of interest occurs if (1) "the representation of one client will be directly adverse to another client"; or (2) "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." RPC 1.7.

Plaintiff first contends that *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) and *Musheno v. Gensemer*, 897 F. Supp. 833 (M.D. Pa. 1995), suggest that a concurrent conflict of interest exists in this case. In *Bell Atlantic*, the Third Circuit noted that in derivative actions, "if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board." 2 F.3d at 1316. Therefore, "except in patently frivolous cases[,] allegations of directors' fraud, intentional misconduct, or self-dealing require separate counsel." *Id.* at 1317. The Third Circuit found disqualification unnecessary in that case, however, because the plaintiffs had "alleged only mismanagement" and there were "no allegations of self-dealing, stealing, fraud, intentional misconduct, conflicts of interest, or usurpation of corporate opportunities by defendant directors." *Id.* at 1316.

Here, the Court cannot say that Plaintiff's allegations are sufficient to warrant disqualification of Defendants' counsel. Plaintiff's claims rely on allegations that the Local Union Defendants failed to abide by various provisions of the CWA constitution and the CWA Local 1033's bylaws when they failed to organize unorganized workers, reported that money was spent on such activities, and failed to provide fair and democratic elections. (Docket Entry No. 1 at ¶¶ 110-114, 121-129). Plaintiff also contends that the National Union Defendants turned a blind eye when he brought these managerial failings to their attention. (*Id*. at ¶¶ 106-129). Construing the complaint in the light most favorable for Plaintiff, however, the Court finds this case analogous to *Bell Atlantic* in which the conduct that formed the basis of Plaintiff's complaint was akin to mismanagement and not acts of self-dealing, stealing, and fraud that give rise to a conflict of interest.

Plaintiff also argues that a concurrent conflict of interest exists due to Plaintiff's claims under Title I and Title V of the LMRDA. He relies primarily on *Urichuck v. Clark*, 689 F.2d 40, 42 (3d Cir. 1982), in making this argument. In that case, the Third Circuit explained that a "union may not provide counsel for its officers in a suit brought against them if the interest of the union and its officers in the outcome of the case may be adverse . . . ." 689 F.2d at 42. In dicta, the Third Circuit explained that a "[c]onflict of interest between a union and its officers is *most clearly apparent* in a suit brought pursuant to Title V of the LMRDA charging union officers with pilfering union funds." *Id*. at 42-43 (emphasis added). While Title V imposes a duty on union officers "to hold [the union's] money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws," 29 U.S.C. § 501(a), the Court reads *Urichuck* to suggest that not all Title V claims automatically present a concurrent conflict of interest. As such, the Court

7

considers it possible for a union official's conduct to violate Title V of the LMRDA without necessitating disqualification of an attorney who seeks to represent both the union and its officials. Here, where Plaintiff's Title V claim relies solely on allegations that union officials turned a blind eye to his complaints regarding the Local Union Defendants' alleged misconduct, the Court finds the allegations insufficient to warrant disqualification.

Plaintiff also relies on *Urichuck* to argue that a concurrent conflict of interest exists under Title I of the LMRDA. In that case, the Third Circuit recognized that joint representation of a union and its officers may be impermissible in a Title I case as "union officers could be guilty of a Title I violation without vicarious liability flowing to the union." *Urichuck*, 689 F.2d at 43. A union could, therefore, make a number of arguments in defense of its actions, including "that its officers were acting outside the scope of their authority and, therefore, that the union, at least is not liable to the plaintiff." *Id*. The Third Circuit reasoned that, in such an instance, "surely the interest of the union and the interest of its officers in the outcome of the litigation is adverse." *Id*. The issue, therefore, is whether the actions of the officers fall within the scope of their authority. *Id*.; *Mulligan v. Parker*, 805 F. Supp. 592, 595 (N.D. Ill. Oct. 9, 1992) ("If the officers' actions were outside of the scope of their official authority, then a conflict of interest exists between the union and the officers . . . ."). When making such a determination, the court "should subject the Title I pleadings to close scrutiny to determine if the defense that the co-defending officers acted *ultra vires* is realistically available to the union." *Urichuck*, 689 F.2d at 43.

Here, although Plaintiff uses strong language to condemn the actions of Defendants, the Court does not find facts to support Plaintiff's contention that an *ultra vires* defense is realistically available to the CWA or the CWA Local 1033. As Plaintiff offers no explanation in

8

his brief for how the CWA or the CWA Local 1033 might actually advance an *ultra vires* defense, (Docket Entry No. 14, Attach. 2 at 16-17), the Court examines the complaint to determine whether such a defense is realistically available. The allegations contained therein, however, do not appear to present a realistic argument that Defendants acted outside the scope of their authority. To the contrary, it appears that they concern allegations that officers merely provided insufficient notice of the provisions of the LMRDA, mishandled Plaintiff's complaints, and failed to uphold various responsibilities concerning elections procedures, organizing activities, and finances as required by the CWA constitution and the CWA Local 1033's bylaws. These allegations express dissatisfaction with the results achieved but do not suggest that the officers lacked authority to participate in those decisions they made. Therefore, there does not appear to be an *ultra vires* defense realistically available to the CWA or the CWA Local 1033 and, therefore, Plaintiff has not met his burden.

Finally, Plaintiff contends that disqualification is warranted under N.J.S.A. 14A:3-5, a statute that addresses when a corporation may indemnify its directors. N.J.S.A. 14A:3-5. Plaintiff, having merely recited several of the statute's provisions, offers no explanation or caselaw to demonstrate the relevancy of this statute. (Docket Entry No. 14, Attach. 2). The Court, finding no such support for this argument, declines to disqualify Defendants' counsel on this basis.

B. *Motion for a Preliminary Injunction*

"[T]he grant of injunctive relief is an extraordinary remedy . . . which should be granted only in limited circumstances." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (citing *United States v. Philadelphia*, 644 F.2d 187, 191 n.1 (3d Cir. 1980)). When deciding whether to grant a preliminary injunction, courts must consider four

9

elements: (1) the likelihood of success on the merits; (2) the probability of irreparable injury to the moving party in the absence of such relief; (3) the possibility of harm to the non-moving party if relief is granted; and (4) the public interest. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 191-92 (3d Cir. 1990). "Only if the movant produces evidence sufficient to convince the [court] that all four factors favor preliminary relief should the injunction issue." *Id.* at 192. Therefore, "a failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *In re Arthur Treacher's Franchise Litig.*, 689 F.2d 1137, 1146 (3d Cir. 1982).

Preliminarily, Plaintiff argues that the CWA Local 1033 and the Local Union Defendants "have waived argument on this point" because their brief does not address Plaintiff's motion for a preliminary injunction. (Docket Entry No. 23 at 11). As Plaintiff bears the burden of showing that a preliminary injunction is warranted, however, the Court declines to grant such extraordinary relief on this basis. Turning to the merits of Plaintiff's motion, the Court finds inadequate support for the injunctive relief Plaintiff seeks. Plaintiff simply has not shown that joint representation is impermissible. As such, the Court finds no basis to issue a preliminary injunction to enjoin the CWA and the CWA Local 1033 from expending funds on legal counsel for the National Union Defendants and the Local Union Defendants.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Disqualify Counsel and for a Preliminary Injunction is denied. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date:   August 20, 2013